Walker, J. Oh the 28th day of November, 1840, Merrill, the defendant, executed to Nelson W. Hill his covenant, by which he became bound to convey to Hill, or his assigns, eighty acres of land, provided the said Hill should, when due, pay to Merrill $100, for the payment of which he had executed his writing obligatory, to Merrill, due twelve months after date. On the 30th of April, 1841, Hill bargained said land to the plaintiff Fears, and thereupon, at the instance of Fears, executed his covenant to Edmund Fears, an infant son of the plaintiff, binding himself to convey to Edmund by deed. The contract made by the plaintiff with Hill was made with a full knowledge that Merrill held a lien on the land for $100, it being the residue of the price agreed upon for the land, and that about the time of his purchase he entered upon the land with the knowledge and consent of both Hill and Merrill. At the time Fears entered on the land it would not have rented for any price : he so improved it that after the first year it would have rented for $25 or $30 per annum. On the 16th of March, 1846, Merrill demanded of Fears possession, and on the same day filed his declaration and sued out his writ of ejectment. These facts being presented to the circuit court, sitting as a jury, upon the plea of not guilty, the court found the issue for the plaintiff, Merrill, and assessed damages to $100, upon which judgment was rendered for possession of the land and the damages so assessed. Fears filed his motion for a new trial upon the ground that the court decided contrary to law, and without sufficient evidence; that the damages assessed were excessive, and contrary to law and evidence: which motion the court overruled. The case presents a question of some importance when we consider the vast amount of real estate conveyed under contracts of like legal effect in this State. The several assignments of errors may be considered as substantially embraced in two propositions: 1st. Can the vendor of land, who sells and gives to his vendee an obligation to convey to him in fee simple, upon the payment of the purchase money, and gives immediate possession of the land, after the payment becomes due, maintain an action of ejectment against the vendee for the possession of the land, and if so, under what circumstances? 2d. If the action be maintainable, when does the right of action commence, and what should be the measure of damages ? Ejectment is a possessory action, and, in cases like this, in order to maintain it, the plaintiff must, at the commencement of his suit, have both the legal and the possessory right in himself. (1 Chitty Pl. 87.) In this case the vendor had parted with his equitable title and right of possession, and consequently, until, by operation of law, or the acts of the parties, these essential requisites were re-united, no action could be maintained. This must depend upon the validity and existence of the contract by which the vendee acquired his right of possession. So long as that contract remains in force the vendor holding the naked legal title can maintain no action, for it would be the heighth of absurdity to allow one to maintain an action for that to which he was not entitled. It, therefore, becomes important to ascertain how and under what circumstances the contract may be considered as rescinded, whereby the vendor re-acquires his right to possession and with it his right of action. Ejectment was originally a mere action of trespass to recover damages sustained by a lessee for years, when ousted of his possession. In time it became a favorite possessory remedy for the the recovery of real property, and particularly as between landlord and tenant, where the tenant held over after his term had expired. But, in all actions in ejectment, whether to regain possession after the term of lease has expired, or where possession is given under an executory contract for the purchase, and in all other cases where the entry is peaceable, the action cannot be maintained until the tenant in possession is placed, either by his own wrongful act, or by notice to quit, and refusal, in the attitude of a trespasser. Hence, in the case of Rightonthc demise of Lewis vs. Beard, 13 East, 210, Lord Ellenbokough, in delivering his opinion, says: “ That, after the lessor had put the defendant into possession, he could not, without a demand of the possession again, and a refusal by the defendant, or some wrongful act by him to determine his lawful possession, treat the defendant as a wrong doer and trespasser, as he assumes to do by his declaration in ejectment.” So in 3 Starkie, p. 1612, it is laid down that “a vendor, who has let his intended vendee into possession, cannot recover the premises by ejectment without proof of demand of possession, for until then the possession is lawful.” In Tilling-hast’s Adams on Ejectment, p. 107, it is said that the party in treaty for purchase being lawfully in possession, cannot be ejected until such lawful possession is determined, either by demand or possession.” So that it is essential to the maintainance of the action, not only that the plaintiff should hold the legal right and the right of possession, but that the defendant should stand, in contemplation of law, at least, a wrong doer or trespasser. Notice is indispensably necessary in order to place him in that attitude towards the vendor, and to enable the vendor to avoid the contract and reclaim his possession, unless the vendee, by his own wrongful act, has placed himself in the attitude of a wrong doer, as by denying the title of him who holds the fee, or claiming under adversé title; but a mere neglect to pay the purchase money when due is not sufficient for that purpose. In the case of Haile vs. McCoy, 7 J. J. Marshall, 318, McCoy .sold to Haile and gave his bond for title to the land; Haile bound himself to pay for it at a future day, and entered upon the land; after the money became due, McCoy sued Haile in ejectment to regain possession; Chief Justice Robertson, in delivering the opinion of the court, said : “ The law will not presume his possession unlawful, and hence reason and analogy seem to forbid that he should be subject to a suit for a wrong of which he had not been guilty in fact, or by construction of law, unless he had refused to surrender on a sufficient demand or notice to quit, or had been guilty of some positive act which rendered his detention of possession wrongful in fact or in contemplation of law : —such, for example, as a denial of the appellee’s title, or a disavowal, or a renunciation, of the contract; a mere failure to pay would not, of itself, be sufficient.” An occupant under an executory contract is a quasi tenant at will, and though he could not be evicted without a previous demand of possession, he is not entitled to six months notice to quit. (4 Dana R. 337. 10 Yerg. R. 513. 1 Greenl. R. 95.) So in the case of Dennis vs. Harder, 3 B. Mon. 175, it is said possession given under a contract purchase is a quasi tenancy, and, without previous notice, express or implied, of the vendor’s intention to avoid the contract and reclaim possession, he cannot take or reclaim possession in ejectment. (9 John. R. 330.) If a vendee, who purchases land on a credit and receives a bond for title when he has paid the purchase money, fails to pay according to the terms stipulated, the vendor may consider the contract at an end, and lawfully sell to a third person. (4 Smedes & Marsh. R. 594. 5 Peter’s Rep. 452.) These authorities we consider directly in point, and they fully sustain us in the opinion to which we have arrived; — that a vendor, who executes a bond for title to his vendee upon the payment of the purchase money at a future day, and puts him into possession, may, if the money is not paid when due, by first giving to the vendee reasonable notice to quit, avoid his contract and maintain an action of ejectment for the land: or, if the vendee has, by his own act, placed himself, in legal contemplation, in the attitude of a trespasser, the vendor may treat him as such, and sue without giving notice. The case in 13 Peters, relied upon by the plaintiff’s counsel, and which is the strongest case we have seen, although it decides that ejectment cannot be maintained where the right of possession has been parted with under an executory contract, we think, when carefully examined, will be found to have been decided on principles not inconsistent with the general current of authorities. In that case, the proprietors of the city of Cincinnati, before a patent had issued for the land, laid off the city and designated on the plat of said city a certain square, and set it apart as a common, and donated it as such to said city. Subsequently the patent issued, and suit was brought in ejectment for the square so donated; the court held that the right of possession having been conveyed and delivered, not for a limited period but perpetually, and the public having acquired an interest in said square as a public highway or thoroughfare, the right of possession claimed was incompatible with the public right, and to dispossess the public -would, in effect, be to hinder their quiet enjoyment of it, and create a nuisance. Therefore, so far from sustaining the ground assumed by the plaintiff’s counsel, the fact that the court in that case rested their opinion upon the peculiar circumstances of the case, and not upon general principles, strongly implies that but for those circumstances the decision would have been different. In the ca,se under consideration, the defendant in the court below, having entered peaceably under the purchase made for his infant son, and, as appears from the evidence, having done no act which amounted to a forfeiture of his contract or made his possession tortious, was therefore entitled to reasonable notice before the right of action accrued to the plaintiff; and this notice must affirmatively appear to have been given before the commencement of the suit. This, we think, the plaintiff has failed to do. The notice was given on the same day the suit was brought. It is impossible for us to determine in point of fact which was first; in computation of time the law knows no fractions of days. We are of opinion that the evidence is insufficient to establish a cause of action prior to the commencement of the suit. If, however, in point of fact, it was made to appear that the notice was served before the suit was commenced, still we are of opinion it is insufficient. The notice should be reasonable notice, to be determined by the circumstances of each case. The English rule is six months, which has been adopted by several of the States. The rule laid down in 4 Kent's Com. 113, is that, in our opinion, best calculated to subserve the the ends of justice. He says: “ Justice and good sense require that the time of notice should vary with the nature of the contract and the character of the estate.” Putwam, Justice, in delivering his opinion, (2 Pick. 71,) said that “the doctrine of notice was grounded on the immutable principles of justice and the common law, and was introduced for the advancement of agriculture and the maintainance of justice, and to prevent the mischievious effects of a capricious and unreasonable determination of the estate.” The argument of the defendant in error, that there is no privity of contract between the plaintiff and himself, cannot, in our opinion, affect the question under consideration. The plaintiff in error entered with his son, an infant, in whom the possessory title existed, but whether with or under him or not, he entered with the consent of the vendor, and is as much entitled to notice as a tenant under lease, or one who enters under an executory contract. If his entry is peaceable and lawful, he is never to be regarded as a trespasser, unless he holds over after notice or does some tortious act. The doctrine laid down by Justice Livingston, and concurred in by Kent and Spencer, (2 John. Rep. 75,) is full and to the point. In the opinion delivered in that case, it is said: “"Without any nice disquisitions of the rights and duties of particular tenants, which may perplex but cannot elucidate the question, I am ready to say, that no person, who holds lands by another’s consent for an indefinite period, ought ever to be evicted by ejectment at the suit of such party without a previous notice to quit.” There is error in the assessment of damages. Until the demand was made, the plaintiff had no cause of action. Prior to that time, the vendor, under the contract which he had made and had not elected to abandon, had the use of the money paid him and interest on the amount unpaid; the assignees of the vendee, the use of the land. The true criterion of damages, in our opinion, is the value of the land from the date of the demand and refusal. Wherefore, we are of opinion that there is error in the record and proceedings in this ease, and that the judgment ought to be reversed.